SOUTHWICK, P.J.,
dissenting.
¶ 22. The parties entered a settlement contract in 1995 to resolve their business disputes. The defendant signed a promissory note and agreed to tender certain stock to satisfy an agreed indebtedness of about $94,500. Four issues are considered by the majority, and reversal is ordered based on two of them. I agree with one ground, but believe we should affirm on the other. With respect for the analysis of my colleagues, I will review each argument to explain my disagreement.
¶ 23. First, certain facts are disputed. Whether those disagreements are material is part of our review. What is agreed includes that the parties entered a settlement in 1995 regarding Dew’s obligations to Tchula. That agreement required Dew to pay about $72,000 to Tchula as evidenced by a promissory note and also to transfer to Tchula 56 shares in Good Hope Gin Company. There is evidence that an explicit condition of stock ownership was to gin all cotton at Good Hope. There is no assertion that Tchula knew of that requirement prior to executing the settlement agreement. The 1995 settlement agreement provided that the conveyance of stock by Dew to Tchula would “be free and clear of all liens, encumbrances, and claims of third parties....” It is also agreed that Dew no longer owns the stock as he assigned all the shares to a third party in 1997. It is further agreed that no payments on the note have been made by Dew.
¶ 24. What is disputed is whether Tchu-la’s owners refused to accept the stock *1009 because of the ginning requirement or instead never had it tendered. It is also disputed whether at the time of the 1995 settlement, there were other differences between the parties. Dew alleges in the present litigation that Tchula had breached an obligation to deliver a certain variety of soybeans and instead provided a lesser grade. Dew denied that occurred. Dew made this dispute a counterclaim to Tchu-la’s action to enforce the 1995 settlement agreement. Another dispute arises from alleged setoffs due because of rebates given Tchula by others on Dew’s behalf and payments in kind by Dew to Tchula. No specific amounts, dates, or sources of the money are alleged by Dew.
¶ 25. Tchula sought and on summary judgment received enforcement of the settlement. The majority reverses because it finds material factual issues as to some aspects of Tchula’s claim.

1. Setoff amounts

¶ 26. The majority finds error in granting summary judgment when there were disputes of material fact as to credits that Dew should receive. These setoffs are briefly described in Dew’s response -to summary judgment. He alleges that Tchula “maintained chemical rebates for chemical purchases” and “took direct payment for receipt of things in lieu of cash.” There is disagreement about whether language in the promissory note executed as part of the 1995 settlement applies to these amounts. The note stated that “all off-sets and opposing claims are hereby waived.”
¶ 27. The majority finds no evidence that would explain whether these claims of offsetting entitlements arose before or after the settlement. Therefore the majority finds error in granting summary judgment. To the contrary, I find the complete absence of any proof regarding Dew’s claim — dates, amounts, sources, or other details of the most minimal sort— means that there was nothing to override Tchula’s right to judgment. To defend against a properly supported motion for summary judgment, a party may not rely on mere denial of material facts nor on unsworn allegations in the pleadings. Neither do arguments and assertions constitute an adequate defense. M.R.C.P. 56(e). Dew’s response, in its sworn affidavit and unsworn pleadings, set forth no specific facts revealing a genuine issue for trial.
¶ 28. The majority’s concern that the offsets and other claims might or might not have arisen after the 1995 settlement agreement reveals the precise problem with Dew’s response. There was no reason to deny judgment based on speculation. Had a trial been held based on this absence of evidence of the setoffs, a directed verdict rejecting the claim would have been necessary. Summary judgment tests whether there is anything to try. On this issue there was not. Therefore I respectfully disagree with the majority that the setoff issue is a basis to reverse.

2. Tchula’s refusal to accept Dew’s alleged tender of Good Hope Gin stock

¶ 29. The 1995 settlement agreement provided for Dew to assign shares of Good Hope Gin to the owners of Tchula, who are W.E. Diggs, Jr. arid W.E. Diggs, III. The stock was to be “free and clear of all Hens, encumbrances, and claims” by other parties. Dew no longer owns the stock as he assigned the shares in 1997 to someone else. The factual issue asserted by Dew is whether he had soon after the 1995 agreement attempted to assign the stock to Tchula’s owners, but they had refused to accept it. The proof from each party on this issue is as follows.
Dew’s evidence: 1) In answers to interrogatories signed by Dew’s attorney, it *1010 was claimed .that W.E. Diggs, III approached him about purchasing the stock. Diggs had prepared the necessary documents and received Dew’s signature on them. Later Diggs “complained to [Dew] about having trouble obtaining the stock from Good Hope Gin.” The problem was said to be that Good Hope wanted Diggs to sign an agreement to gin all of his cotton there, something Diggs apparently was unwilling to do. A second filing of these interrogatory answers that occurred after the motion for summary judgment was granted included an affidavit by Dew that the answers were correct.
2) Also in the interrogatory answers, Dew asserted that the stock was assigned in 1997 to a third party for $100 per share, a transaction that was needed because the assignee controlled the bank at which Dew did business and Dew continued to need credit from the bank.
3) In an affidavit, Dew stated that he had tendered the stock to “Walter Diggs and Sonny Diggs,” and that they refused it.
Tchula’s evidence: 1) In answers to interrogatories signed by W.E. Diggs, Jr., it was asserted that Dew told him that Good Hope would not reissue the stock in Diggs’ name and therefore Dew refused to transfer the stock.
2) In answers to admissions, Diggs denied that the stock was ever tendered either to himself or his son.
¶ 30. I agree with the majority that a factual dispute exists. Whether the point of departure of the two versions of events is material needs further discussion.
¶ 31. What Tchula is not arguing might be noted first. It has not alleged that the requirement that owners of the stock agree to gin all their cotton with Good Hope violated the 1995 settlement agreement’s prohibition on “liens, encumbrance, and claims of third parties” on the stock. Instead, Tchula argued that the fact dispute was immaterial since Dew could have satisfied his obligation by delivering the stock to Good Hope Gin and instructing them to transfer it. Dew has now made compliance with this part of the settlement impossible by assigning the stock to a third party.
¶ 32. Thus we must consider whether Dew’s assertions in discovery that he signed documents to transfer the Good Hope stock, but Tchula’s owners never received the stock because those owners asserted that they would have to gin all their cotton at Good Hope, is a material factual matter. I have noted that Dew’s initial interrogatory answers were not sworn as is required. M.R.C.P. 33(a). Though interrogatory answers can be considered in resolving motions for summary judgment, that in part arises from the fact that proper interrogatory answers are sworn and thus are the equivalent of an affidavit from the responding party. M.R.C.P. 56(c). Unless they are sworn, interrogatory answers serve no better purpose than unsworn pleadings that specifically are not to be considered. M.R.C.P. 56(e). Tchula never complained of that omission and a post-judgment filing of sworn answers occurred. I note also that an affidavit from Dew is sworn and alleges that he tendered the stock to Tchula’s owners and it was rejected.
¶ 33. Since Dew by sworn affidavit in effect asserted that he complied with the tender of stock requirement, then a dispute of material fact exists as to that issue. If that assertion is proven, then the fact that two years later he assigned the stock to someone else does not necessarily end the question of an adjustment to his 1995 contractual obligations to Tchula. Even if it is true that Dew could always have just delivered the shares to Good Hope in com *1011 pliance with his obligation, that is not specifically what the 1995 agreement provided. The means to comply were unstated. A permissible means under the agreement might have been to tender the stock to Tchula, and that is what Dew asserts that he did. If Dew can prove that events occurred as he asserts, can prove that the attempted assignment complied with the agreement, and then can demonstrate some damage to himself by Tchula’s breach, then there may be relief that is appropriate. Whether any requirement to gin all cotton at Good Hope was an improper “encumbrance” under the settlement agreement could also be considered.
¶ 34. Thus I agree that we should reverse summary judgment relating to the stock. I do not find that this reversal affects the remainder of Dew’s possible obligation to Tchula under the settlement. There was to be paid about $72,000 in cash with the stock representing means to pay the remainder of the overall $94,500 that Dew in 1995 agreed that he owed Tchula. I will examine the remaining issues to determine if judgment for the remaining $72,000 should remain unaffected.

3. Fraudulent inducement

¶ 35. There was a legal dispute below of the effect of Dew’s failure to plead fraud. In answers to requests for admissions, Dew denied the enforceability of the 1995 agreement by saying that he was fraudulently induced to sign it. Just the bald statement was made without elaboration. The only potential description of the fraud that appears anywhere is in Dew’s affidavit, in which he asserts that he “relied upon the representations of Tchula Grain’s representatives that they would accept tender of my stock in partial satisfaction of debts owed to Tchula Grain.” If that is the fraud, then it solely applies to the question of the stock.
¶ 36. Fraud is not a lightly made allegation to be supported by inference and general statements. When fraud is alleged, “the circumstances constituting fraud or mistake shall be stated with particularity.” M.R.C.P. 9(b). “The circumstances of the alleged fraud such as the time, place and contents of any false representations or conduct must be stated.” Brabham v. Brabham, 483 So.2d 341, 342 (Miss.1986). The majority explains that Dew’s pleading obligations on summary judgment were reduced, but there at least must be some sworn evidence of the particulars of the alleged fraud. Among other elements of fraud that we must infer from bare responses to answers to admissions and this statement in the affidavit, are that Dew could prove that Tchula’s owners knew of the problems with the stock from the beginning, or for other reasons never intended to accept it, or in some other way had plans at the time of the execution of the agreement that were inconsistent with what they had just signed. Dew could have attempted to show that Tchula never presented the stock to Good Hope Gin, or any such restriction on ownership did not exist, or if it existed Tchula always knew about it. Instead, the bare facts that Dew asserts, even if proven, are entirely consistent with a post-agreement discovery by Tchula that acquiring the stock would require Tchula’s owners to gin all their cotton at Good Hope. It is not Tchula’s burden on summary judgment to disprove fraud, but Dew’s obligation to show some factual basis to continue.
¶ 37. In a similar precedent, summary judgment was upheld because any jury that would have applied the required standard of clear and convincing evidence could not reasonably have found fraud. Haygood v. First Nat’l Bank of New Albany, 517 So.2d 553, 555-56 (Miss.1987). I find nothing in what was presented to the *1012 trial court that should have kept the issue of fraud alive. I agree with the majority that summary judgment was properly granted on this question.

4. Dismissal of counterclaim for $180, - 000.

¶ 38. I agree with the majority’s resolution of this issue. Dew did not provide any evidentiary basis to overcome summary judgment.
Conclusion
¶ 39. I would remand only on the factual question of whether Dew tendered the stock to Tchula but had it refused. Those questions solely relate to the means by which Dew was to pay about $22,000 of his agreed obligation. Tchula’s entitlement to the remaining $72,000 has not been affected by anything Dew introduced on summary judgment, and I would affirm.
McMILLIN, C.J., and IRVING, J., join this separate opinion.